## *In re* RIDER'S ESTATE.

*(Surrogate's Court, Chautauqua County. September, 1888.)*

1. WILLS—CONTRACT TO MAKE—WHEN TITLE PASSES—DEBTS OF TESTATOR.

A testator made a parol agreement with a man and wife that if they would move upon his farm, take care of it, and provide for testator's maintenance during his life, he would give them the farm at his death. They performed their part of the agreement, except that during portions of the last three years of testator's life, he lived with and was supported by his sister. He devised the farm to the wife for life, and at her death to her children. Testator's sister obtained a judgment for the support of the testator during the time he lived with her, and sought to subject the farm to the payment of the judgment. *Held*, that a finding that the title to the farm was in the testator at the time of his death, will not be disturbed.

2. TRIAL—REFUSAL TO CHARGE—FORMER CHARGE.

A refusal to charge that if the jury were satisfied from the evidence that the husband and wife were by the agreement to have the farm at the testator's death, and they had fulfilled the agreement, that then the testator was not seized of the land at his death, was not error, where the same matter had been given in a former charge.

Application by Bersheba Chipman, a creditor of Nathaniel T. Rider, deceased, for a decree directing the payment of applicant's debt out of the real estate of deceased.

*C. F. Chapman*, for petitioner.    *Obed Edson*, for objectors.

SHERMAN, S. This is a motion for a new trial upon the question of fact, tried in the county court, before Hon. J. S. LAMBERT, county judge, and a jury, as to whether or not the decedent died seised of certain land which the petitioner, a creditor, seeks to sell in this court, under sections 2749 and 2750 of the Code, for payment of debts. The jury found the title of the land in the decedent at his death, and the contestants, legatees under the will, now move for a new trial in this court, upon the grounds that the verdict was

against evidence, and of alleged error in the charge of the county judge to the jury. The petitioner's claim as a creditor was based upon a judgment recovered by her in the county court, September 25, 1884, against Emily Hunt, as executrix of the last will of the deceased, for the sum of $401.21, and $186.50 costs. The action was contested by the executrix, and tried upon the merits before W. O. Benedict, Esq., as referee. The petitioner's claim as such creditor was for services performed by her for said Nathaniel T. Rider, who was her brother, in his life-time, during the years 1878, 1879, 1880, and 1881, in boarding and lodging him; and in washing, mending, and making clothes for him in said years. The deceased died July 6, 1882. He made his will, dated June 20, 1882, which was probated November 14th of the same year, as a will of real and personal estate. His will contained the following recital: "Whereas, I have lived with and had my support and maintenance with Judah B. Hunt and Emily Hunt, his wife, (who is my niece,) for many years past, with the understanding that they should have my real estate at my decease, now therefore, in consideration thereof, and for the regard I bear for them,"—and then, by such will, he devised his real estate to his said niece, Emily Hunt, during her life, and at her death to George W., Warren M., and Grant A. Hunt, children of said Emily and Judah B. Hunt, and appointed his said niece, Emily Hunt, sole executrix. In her verified petition for the probate of the will she alleged that the deceased died possessed of real and personal property in Chautauqua county, and that such personal property did not exceed in value $150, and his real property $1,800.

The evidence on the trial showed that the said Nathaniel T. Rider, being the owner, in 1862, of an improved farm of 50 acres, and of some stock and farming tools thereon, made a verbal agreement with his said niece, Emily Hunt, and her husband, Judah B. Hunt, to the effect that they should move upon his farm, and he live with them and be clothed and supported by them during his natural life, they working the farm, and having the avails thereof with him, all living together as one family, without any particular agreement as to either having the exclusive possession thereof, and all using in common the personal property of each, and the products of the farm for their mutual support and maintenance; and that at the death of said Rider the said Emily Hunt, or she and said Judah B. Hunt, her husband, were to have the farm as their own, and the personal property of the deceased then remaining. That such agreement was substantially carried into effect and executed by the said parties thereto, except as hereinafter stated. The said Hunts went onto said farm, taking with them their stock, farming tools, and household furniture, all of the value of about $200, and all living in the same house, and having the use and possession in common of the said farm and of said personal property and of the stock and farming tools belonging to said Rider, which were of the value of about $100, and together erected a barn upon the farm, and made other permanent improvements thereon. That soon after the death of the said testator, in 1882, the said Emily Hunt, executrix, caused an inventory to be taken of the personal property owned by the testator at his death on said farm, and which had been so used in common thereon, and which property in said inventory was appraised as of the value of $99, being insufficient to pay the debts, funeral expenses, and expenses of administration of the estate of deceased. The debts owing by the testator at his death consisted of a doctor's bill, and other little claims, amounting in all to $42.05, which have been paid, excepting said claim of the petitioner of $401.21.

The evidence further showed that, during some parts of the years 1878, 1879, 1880 and 1881, the said Nathaniel T. Rider did not reside with said Hunts upon the farm, and was not wholly supported by said Emily and Judah B. Hunt, but lived with and was boarded, clothed, and supported by his sister, the petitioner, Bersheba Chipman, for which she holds a valid claim

against the estate of the deceased, now due, of said $401.21, with interest from September 25, 1884, for the payment of which this proceeding was instituted. The evidence also showed that the testator was, at his death, residing on said farm, and being supported by the said Emily Hunt and Judah B. Hunt in the same manner as prior thereto, under the verbal agreement made between them, as above stated, in 1862.

The facts as proved show the claim of the petitioner, Bersheba Chipman, for the support of the testator, to be equitable and just as against this estate, and as against the claims of said Hunts thereto, under the agreement of 1862, and said will. There was evidence given tending to show that the testator was in possession of this land, and the owner of it, at his death. By his will he gave the use of it to Emily Hunt during her life, and thereafter in fee to her three children above named, thereby wholly ignoring the claims of her husband, Judah B. Hunt, under the verbal agreement of 1862, and also, in part, the claims of said Emily under the same agreement.

The learned counsel for the contestants strongly claims that the county judge erred in refusing to charge the jury that, if they were satisfied from the evidence that said Emily and Judah B. Hunt were by the agreement to have the real estate in question at the death of Nathaniel T. Rider, and they had fulfilled said agreement, that then the said Nathaniel T. was not seised of said land at his death, and the interrogatory should be answered "No." The county judge declined to charge on that subject other than he had charged, stating that he had charged the jury on that proposition as favorably to the contestants as the evidence would justify; and the contestants excepted.

I think that the case shows that the learned judge had charged as so requested, in charging substantially that if the jury found that the contestants went into possession of this land under an agreement to support Rider during his life and had improved the land as claimed, and had fulfilled their agreement, then they would answer the question "No." On other parts of his charge, the county judge mentioned possession of 20 years of the land, but his attention was not particularly called to that part of his charge, and no specific objection or exception was taken thereto. In my opinion no error was committed to justify the granting of a new trial in this matter, and the motion, therefore, is denied.